UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NICOLE C.,
        Plaintiff,

v.                                           C.A. No. 19-127JJM

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,
        Defendant.

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On August 14, 2017, Plaintiff Nicole C. applied for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under § 1631(c)(3). Alleging onset on June 26, 2017, Plaintiff contends that the Administrative Law Judge ("ALJ") erred in assessing the impact of fibromyalgia[1] on her residual functional capacity ("RFC"),[2] in that he did not accept her subjective statements as reliable and found the opinion of her treating physician, Dr. Miridula Menon, to be unpersuasive, but found the contemporaneous opinion of the state agency non-examining physician, Dr. Marcia Lipski, to be persuasive. Defendant Andrew M. Saul ("Defendant") moves for an order affirming the Commissioner's decision. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having reviewed the record, I find that the ALJ's findings are consistent with applicable law and sufficiently supported by substantial evidence. Accordingly, I recommend that

---

[1] Plaintiff's application and medical record reflect many other impairments and conditions that were considered by the ALJ. However, her motion to reverse focuses only on fibromyalgia; accordingly, this report and recommendation is similarly focused.

[2] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be GRANTED.

I.      **Background**

Plaintiff's prior disability applications for SSI and DIB were denied at the initial phase in April 2016. She worked after that as a clerk in various medical offices until June 26, 2017 (the alleged onset date); she was only thirty-nine years old when she stopped working. Tr. 171. Plaintiff is married with three children, all at home; she completed eleventh grade and has her GED. Tr. 49. In addition to fibromyalgia, Plaintiff suffers from obesity, degenerative disc disease, migraine headaches, hypothyroidism and depression/anxiety. Dr. Menon is Plaintiff's primary care physician; her treating relationship with Plaintiff extends throughout the period in issue, from prior to October 2016[3] through February 2018 with appointments generally once a month.

The relevant treating history begins shortly before onset, in May 2017, when Plaintiff saw one of Dr. Menon's colleagues for a headache and low back pain after moving furniture for her daughter. Tr. 470. An x-ray revealed little more than moderate disc space narrowing at the L5-S1 level but, on examination, the lower lumbar spine was "quite tender," Tr. 472, and straight leg raise was positive on one side. Other observations were normal, including normal gait. Tr. 441. Muscle relaxants, prednisone and ibuprofen were prescribed. During the summer of 2017, Plaintiff saw Dr. Menon five times. Dr. Menon addressed Plaintiff's complaints of body aches and fatigue, but other than myalgias and pain at an appointment right after a motor vehicle accident, the examination results were largely normal. Tr. 448-61, 552-54. In August 2017,

---

[3] According to Dr. Menon's opinion, her treating relationship with Plaintiff began in September 2012. Tr. 618.

2

based on Plaintiff's complaints of pain, Dr. Menon referred Plaintiff to a rheumatologist, Dr. John Conte.  At his initial evaluation, Dr. Conte found that Plaintiff was obese and had multiple tender points, but that she was "[c]omfortable at rest," Tr. 494, and had normal range of motion, good strength, normal gait and "[s]trong grips," Tr. 495.  He noted the absence of any "apparent inflammatory or autoimmune condition that would explain her sundry pain complaints and fatigue," and suggested that she consider returning to work.  Tr. 497.  In early September 2017, Dr. Menon referred Plaintiff to Ortho RI; despite subjective complaints of pain at the most extreme severity level (10/10) and a limp, objective findings on examination included the observation that she was "comfortable," with some limits on motion and strength for an injured hip, but were otherwise normal, with independent ambulation and normal gait.  Tr. 499-500.  She was advised to lose weight and exercise and that conservative treatment would be appropriate.  Tr. 500.

During the fall of 2017, complaining of chest tightness, generalized body aches and fatigue, radiating back pain causing numbness in the right lower extremity, and the inability to walk even a few steps without pain, Plaintiff was seen four times by Dr. Menon.  Tr. 42-46, 574-78.  Meanwhile in early November, Plaintiff returned to Dr. Conte, who noted the intervening motor vehicle accident and, this time, diagnosed fibromyalgia and trigger finger (both hands); on examination, Dr. Conte found tenderness and trigger points in the back, hips, knees and shoulders, but normal strength and gait, including "[s]trong grips."  Tr. 519-24.  He prescribed Naltrexone and suggested she return in two months.  Tr. 530.  In early November 2017, Plaintiff was seen at the Spine Center; on examination by Dr. Keith-Austin Scarfo, she was in no acute distress, had normal strength, intact range of motion and negative straight-leg raise, with a mildly antalgic gait and diffuse tenderness (to light touch) in the spine.  Tr. 556.  Dr. Scarfo noted that

3

the CT scan of the spine was normal except for a possible disc bulge. He also observed: "I feel that she is on far too many medications that do not provide her any benefit." Tr. 558. Plaintiff also continued to go to Ortho RI, where she saw Dr. Maher El-Khatib in late November. On examination Dr. El-Khatib found normal gait, normal strength, negative straight-leg raise, "[s]ome tenderness over lower lumbar spinal and paraspinal areas," but significant tenderness in the sacroiliac joint. He suggested injections for the latter (which he administered in December 2017) and urged Plaintiff to lose weight as a way to relieve her symptoms. Tr. 623-24.

In December 2017, Dr. Marcia Lipski, a state agency expert, reviewed the foregoing record. She acknowledged that Plaintiff is morbidly obese and accurately summarized findings on examination by Dr. Conte, Dr. Menon and Dr. Menon's colleagues, as well as Plaintiff's statements, for example, as set out in the Function Reports. Based on this file review, Dr. Lipski endorsed as severe obesity and "disorders of muscle, ligament and fascia," Tr. 203, 219, and opined to an RFC limited to the ability to lift no more than twenty pounds occasionally, to sit or to stand/walk for about six hours in an eight-hour day, with significant postural and manipulative (overhead reaching) limitations. Tr. 206-07, 222-23. The Social Security Administration ("SSA") assessment notes that Plaintiff's statements regarding her symptoms based on "myofascial pain and morbid obesity" are only partially consistent with the medical and non-medical evidence of record. Tr. 205, 221.

Soon after Dr. Lipski signed her opinion, on January 5, 2018, Plaintiff returned to Dr. Menon. Tr. 638. One of the purposes of this appointment was to "[d]iscuss paperwork." Id. On examination, Dr. Menon made normal findings except for "[m]ultiple tender points" and recommended that Plaintiff continue with gabapentin, Flexeril and ibuprofen, with emphasis on getting adequate sleep, exercise and stress control. Tr. 640. There is no prescription,

recommendation, observation or suggestion in this or any other treating record that Plaintiff use a cane or other assistive device when standing or walking, that Plaintiff elevate her legs with prolonged sitting for 50% of the time, or that Plaintiff is limited in the use of her hands and fingers to 25% of the time.

On the same day as this appointment, Dr. Menon signed her opinion. In it, she wrote that Plaintiff's diagnosed impairments include fibromyalgia, lumbar radiculopathy, migraines, sleep apnea, hypothyroidism and mental issues, while her symptoms include tender points, headaches, chronic fatigue and pain virtually everywhere, among others. Tr. 618. Based on these impairments, Dr. Menon opined that Plaintiff cannot walk more than one block, cannot sit for more than twenty minutes, cannot stand for more than ten minutes, cannot sit and stand/walk for as many as two hours in an eight-hour day, cannot carry even ten pounds (except rarely), and can use her hands and fingers only 25% of the time, as well as that she is limited in the use of both arms to 25% of the time, except for reaching, which she can do for 50%-75% of the time. Tr. 619. Further, Dr. Menon opined that, while engaged in occasional standing/walking, Plaintiff "must . . use a cane or other assistive device" and "should" keep her legs elevated above knee level for 50% of the workday. Tr. 620.

The record for the period after these opinions were signed by Dr. Lipski and Dr. Menon may be briefly summarized. In January 2018, Plaintiff was screened for carpal tunnel syndrome ("CTS") and was diagnosed with minimal left CTS, but the clinical note indicates that the diagnosis was by ultrasound criteria only in that there were no signs on the nerve conduction study. Tr. 663. Also in January, Dr. El-Khatib continued to observe normal gait, normal muscle tone and negative straight leg raise, but limited heel/toe walking, with some tenderness and painful flexion and extension of the lumbar spine and significant tenderness in the sacroiliac

5

joint. Tr. 629. He administered lumbar facet block injections. Tr. 630-32. In February, Plaintiff saw Dr. Menon again; although she complained that the fibromyalgia pain was worse, she also told Dr. Menon that she "does try to walk everyday"; Dr. Menon's examination yielded all normal findings. Tr. 633, 635. On a referral from Dr. Menon, a neurological examination resulted in observations of independent ambulation, normal strength and normal gait; a brain MRI performed based on Plaintiff's complaints was normal. During this appointment, Plaintiff told the treating provider that "[s]he takes care of her family which include her husband, two younger children [at] home, and an older one who's 21." Tr. 657. The notes from mental health providers from February through August 2018 include observations of normal gait and Plaintiff's reports of walking in the woods (where she hurt her ankle), going out with her family for Mother's Day and "coping with things much better." Tr. 166, 692-707.

## II.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The

6

determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001).

### III.  Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.[4] The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c). If a claimant becomes

---

[4] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, I cite to one set of regulations only. See id.

8

disabled after loss of insured status, the claim for disability benefits must be denied despite disability. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

**B.     Opinion Evidence**

For applications like this one, filed on or after March 27, 2017, the SSA has fundamentally changed how adjudicators assess opinion evidence. The familiar and longstanding requirements – that adjudicators must assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. 20 C.F.R. § 404.1520c(a). Instead, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Id. Rather, an ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 404.1520c. The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 381, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of

Medical Evidence, 82 Fed. Reg. at 5859.  In other words, "[a] medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.

If the record contains "two or more medical opinions . . . about the same issue [that] are both equally well-supported . . . and consistent with the record," the ALJ's decision must articulate how the other persuasiveness factors were considered.  20 C.F.R. §§ 404.1520c(b)(3).  The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1520b.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1520b(c)(3).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion.  See 20 C.F.R. §§ 404.1545-1546; see Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793-94 (1st Cir. 1987) (per curiam).  The resolution of such conflicts in the evidence and the determination of disability is for the Commissioner.  See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

C.     **Evaluation of Subjective Symptoms**

When an ALJ decides to discount a claimant's subjective statements about the intensity, persistence and severity of symptoms, he must articulate specific and adequate reasons for doing so or the record must be obvious.  See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309-10 (D. Mass. 1998).  A reviewing court will not disturb a clearly articulated finding supported by substantial evidence.  See Frustaglia, 829 F.2d at 195.  If proof of disability is based on subjective evidence so that the

credibility determination is determinative, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

### D. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1991). Congress has determined that a claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. SSR 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments that reasonably could be expected to produce the pain alleged, the ALJ must consider the following:

  1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4. Treatment, other than medication, for relief of pain;

5. Functional restrictions; and

6. The claimant's daily activities.

Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986); SSR 16-3p, 2017 WL 4790249, at *49465; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I. Nov. 30, 2011). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

If a treating physician finds that his patient's physical impairment is real, the physician may rely on the claimant's subjective statements regarding the impact of pain on the ability to function in opining to his patient's RFC and the ALJ may not discount an otherwise well-founded opinion on that basis. Ormon v. Astrue, 497 F. App'x 81, 85-86 (1st Cir. 2012). "[T]he statements of the claimant and his doctor must be additive to clinical or laboratory findings" in considering pain's functional implications. Avery, 797 F.2d at 21. It is error for the ALJ to place "an extreme insistence on objective medical finings to corroborate subjective testimony of limitations of function because of pain." Id. at 22

## IV. Analysis

I begin with what is not in issue. While Plaintiff suggests that the ALJ failed properly to apply SSR 12-2p, 2012 WL 3104869 (July 25, 2012), the Commissioner correctly points out that the ALJ did not question, but accepted the diagnosis of fibromyalgia, and issued a decision that is consistent with the principle that fibromyalgia is a condition that is established primarily based on the patient's subjective pain, with trigger points the only objective symptom, as our Circuit Court held in Johnson v. Astrue, 597 F.3d 409, 412 (1st Cir. 2009). See Howcroft v. Colvin, C.A. No. 15-201S, 2016 WL 3063858, at *10-11 (D.R.I. Apr. 29, 2016), adopted, C.A. No. 15-201 S, 2016 WL 3072254 (D.R.I. May 31, 2016). Nevertheless, a diagnosis of fibromyalgia does not equate to *per se* disability nor does it mandate that the claimant's testimony about the limiting effects of pain must be credited without evaluating the reliability of such subjective statements. See Howcroft, 2016 WL 3063858, at *12 (despite subjective complaints, fibromyalgia is not supportive of disability when claimant exhibited normal gait, reflexes and strength, full range of motion of all joints, with only slight discomfort in her knees and shoulders and no swelling or warmth in any joints). The principal issue in this case is whether the ALJ's treatment of the juxtaposed medical opinions – on one hand, the opinion of the long-time treating physician, Dr. Menon, and, on the other hand, the opinion of the SSA social security expert, Dr. Lipski – is based on substantial ("more than a scintilla") evidence analyzed through application of the correct legal standard. In these opinions, issued within a month of each other, Dr. Menon opined to extreme limitations that would preclude all work, while Dr. Lipski acknowledged that Plaintiff suffers from severe impairments that have caused significant limitations but opined that she retains the ability to work. The ALJ found Dr. Menon's opinion "unpersuasive" and Dr. Lipski's opinion "persuasive."

Focusing first on the legal standard, it is clear that the ALJ correctly adopted and deployed the new principles expressed in 20 C.F.R. § 404.1520c; his decision is clearly aimed at examining the persuasiveness of each of the medical opinions, with specific attention to their supportability and consistency. The issue for the Court, then, is whether the ALJ's conclusions as to the persuasiveness of each opinion are adequately supported by substantial evidence. In making this inquiry, the Court must remain mindful that its role is not to reweigh the evidence: even if it might have come to a different conclusion. "[I]f a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [his] conclusion," the Commissioner's decision must be affirmed. Purdy, 887 F.3d at 13 (citation omitted).

To articulate his analysis of supportability and consistency of the Menon opinion, the ALJ examined her treatment notes, which he found did "not support these dire assessments." Tr. 26; see Robert R. v. Berryhill, C.A. No. 18-00561-JJM, 2019 WL 1748611, at *7 (D.R.I. Apr. 19, 2019) (ALJ reasonably discounted doctor's opinion based on findings showing mostly normal strength, gait and sensation). In so doing, the ALJ accurately summarized not only Dr. Menon's treating observations, but also those made by other treating providers. These clinical findings include normal gait,[5] independent ambulation and largely normal range of motion and strength, including intact grip strength. Such objective observations clash with Dr. Menon's opinions, for example that Plaintiff "must" use a cane or assistive device to walk,[6] that Plaintiff

---

[5] An isolated exception is Dr. Scarfo's observation of mildly antalgic gait on November 2, 2017. Tr. 556.

[6] As the ALJ correctly noted, Dr. Menon did not prescribe the use of any device to assist with walking. Tr. 23.

"should" elevate her legs 50% of the time and that Plaintiff cannot use her hands[7] or fingers[8] for more than 25% of a workday. The treating record is devoid of any such limitations, leaving them unsupported, as the ALJ correctly found. The ALJ also noted the inconsistency between Dr. Menon's opinion that Plaintiff cannot walk more than a city block or for as much as two hours during a workday and some of the record references to Plaintiff's walking, hiking, running errands for an hour and a half and attending medical appointments with her children.[9] This is enough to permit the Court to find that the ALJ's persuasiveness finding respecting the Menon opinion is adequately supported by substantial evidence. See Gorham, 2019 WL 3562689, at *5 (where ALJ's examination of supportability and consistency included explanation of reasons for discounting medical opinion, with extensive citations to medical treatment records, treatment of medical opinion does not warrant remand).

The bookend to the finding that the Menon opinion is unpersuasive is the ALJ's treatment of the Lipski opinion. In this portion of the decision, the specific analysis at first blush seems less robus than that deployed for the Menon opinion. Tr. 26. In the operative paragraph, the ALJ correctly acknowledges Dr. Lipski's status as a specialist who "is intimately familiar with

---

[7] As to Plaintiff's hands, the record mentions "carpal tunnel release" and "De Quervain's release" in the past. Tr. 146. During the period in issue, based on her complaints, she was evaluated for carpal tunnel. A "minimal" left side ultrasound finding was noted, of which there was no sign in the nerve conduction study. Tr. 663. No treatment was recommended.

[8] As to Plaintiff's fingers, there is one reference to "trigger finger" in a treating note written by Dr. Conte. Tr. 519-30. However, his only finding on examination is "[s]trong grips." Dr. Conte offered an injection for the finger issue, but Plaintiff declined. Tr. 524, 530. Issues with Plaintiffs fingers are not mentioned again in the record.

[9] Plaintiff argues that it is error for the ALJ to consider whether her ability to take herself and her children to their medical appointments evidences the ability to function at a level that is different from what Dr. Menon described in her opinion. Plaintiff is right that it would be error to find that evidence of an individual going to medical appointments is proof that the individual is not disabled. However, that is not what the ALJ did here. Rather, the ALJ simply examined the consistency between Plaintiff's capacity to get herself and her children to many appointments and the extreme limitations in the Menon opinion. To perform such an analysis is not error. Krol v. Berryhill, CIVIL ACTION NO. 15-13533-GAO, 2017 WL 1196644, at *5 (D. Mass. Mar. 29, 2017) (ALJ properly considered claimant's ability to attend medical appointments as one of several relevant factors); Brown v. Colvin, Civil No. 14-cv-256-JL, 2015 WL 4416971, at *6 (D.N.H. July 17, 2015) (similar).

the disability process." Tr. 26; see 20 C.F.R. § 404.1513a(b)(1) (state agency physicians are deemed "highly qualified and experts in Social Security disability evaluation"); Kandzerski v. Colvin, C.A. No. 15-401ML, 2016 WL 7632863, at *6 (D.R.I. Dec. 9, 2016), adopted, 2016 WL 7632863 (Dec. 9, 2016). And he notes that the Lipski assessment of Plaintiff's limitations is "consistent with, and well supported by, the longitudinal record." Tr. 26. However, the latter, seemingly skimpy, statement is backed up by the ALJ's decision read as a whole, which taps into the record at length and in detail, including a detailed discussion of Plaintiff's reports of daily activities, the nature and scope of treatment and the many treating observations, including that she appeared to be in "no acute distress." Tr. 22-27; see Tr. 494 (appears "[c]omfortable at rest"); Tr. 499-500 ("GENERAL PRESENTATION: comfortable patient in no acute distress"). Throughout his examination of the record, the ALJ explicitly articulates the consistency between the record and each of Dr. Lipski's assessed limitations, as well as the record support for each. Tr. 22-27. Mindful that an ALJ is not required to "neatly package" his analysis in the same paragraph where he also discusses a specific medical opinion and that the Court should examine the entirety of the ALJ's decision to find support for his conclusions, West v. Colvin, C.A. No. 16-081M, 2016 WL 6768905, at *7 (D.R.I. Oct. 24, 2016), I find that the ALJ's treatment of the Lipski opinion is also well supported by substantial evidence.

The final point for the Court to consider is the ALJ's evaluation of Plaintiff's "credibility." Woven into Plaintiff's arguments is the proposition that the ALJ's decision is inconsistent with SSR 12-2p, because he did not properly assess her subjective complaints. SSR 12-2p states: "[w]idespread pain and other symptoms associated with FM, such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories." 2012 WL 3104869, at *6. However, the ALJ's

16

decision is consistent with SSR 12-2p in that he adopted an RFC with significant limitations based on the pain and symptoms associated with fibromyalgia. For reasons that are well grounded in the substantial evidence of record,[10] he appropriately found that Plaintiff overstated the intensity of her pain and its limiting effects. This credibility determination is entitled to due deference because it is well supported by specific findings. See Howcroft, 2016 WL 3063858, at *11 ("fibromyalgia does not alter the bedrock principle that the ALJ's credibility determination must be afforded due deference by the reviewing court as long as it is sufficiently supported by specific findings") (citing Frustaglia, 829 F.2d at 195).

At bottom, the outcome of this case turns on the reality that this Court is not empowered to consider Plaintiff's application *de novo*, nor may it undertake an independent assessment of whether she is disabled under the Act. Rather, the Court is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Gorham, 2019 WL 3562689, at *8 (citing Nguyen, 172 F.3d at 35). When the ALJ's findings are properly supported by substantial evidence – as they are in this case – the Court must sustain those findings even when there may also be substantial evidence supporting the contrary position. See, e.g., Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez, 647 F.2d at 222 ("We must uphold the [Commissioner's] findings in this case if a reasonable

---

[10] For example, the ALJ relied on the state agency file review assessment on reconsideration, which found that Plaintiff's statements about her symptoms were only partially consistent with the evidence in the file, particularly the evidence of her activities of daily living. Tr. 205, 217. The ALJ also relied on the Lipski opinion, as well as his own detailed review of the record, including, by way of just two examples, the suggestion of the rheumatologist (Dr. Conte) that Plaintiff should "consider returning to work," Tr. 497, and the contrast between Plaintiff's complaints of fatigue and the consistent medical observation that she appeared alert. Tr. 22, 24; see Tr. 499-500 (Plaintiff subjectively describes pain of 10/10 at same appointment where objective clinical observer records that she appears "comfortable").

mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

## V. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be GRANTED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 6, 2020